UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN CUSTOM MARBLE, INC., et al., <br><br> Defendants. | Case No. 19-cv-03424-EMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> Docket No. 50 |

## I.      INTRODUCTION

Plaintiff, Eden Environmental Citizen's Group, LLC ("Eden" or "Plaintiff"), brings a citizen suit under the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*. Eden seeks various forms of relief—including injunctive relief, declaratory relief, civil penalties, and remediation—against Defendants American Custom Marble, Inc., a California corporation ("ACM") and Patricia A. Sharp ("Ms. Sharp"), the corporation's legal secretary (collectively "Defendants"), for violations of the National Pollutant Discharge Elimination System ("NPDES") permit requirements of the CWA.

## II.      BACKGROUND

A.      Factual Background

According to the operative Complaint, Eden "is an environmental membership group organized under the laws of the State of California as a limited liability company on June 1, 2018." First Amended Complaint ("FAC") ¶ 8, Docket No. 19. Its "organizational purpose is the protection, preservation and enhancement of California's waterways," and it contends that its "mission is implemented by enforcing the provisions of the Federal Clean Water Act and

California's Industrial General Permit by seeking redress from environmental harms caused by Industrial Dischargers who pollute the Waters of the United States, through community education and citizen suit enforcement when necessary." *Id.* ¶ 9. It contends that it has members throughout the state of California, that those members use local waters "for surfing, kayaking, camping, cycling, recreation, sports, fishing, swimming, hiking, photography, nature walks and scientific study," and that "[t]heir use and enjoyment of these natural resources are specifically adversely impaired by Defendants' failure to comply with the procedural and substantive requirements of the California Industrial General Permit and Federal Clean Water Act." *Id.* ¶ 11.

Plaintiff alleges that American Custom Marble is located in San Jose, California and "was formed on or about December 23, 1996, as a California corporation, and is identified in the Regional Water Board's records as the Industrial General Permit applicant and operator of the Facility." *Id.* ¶ 14. Ms. Sharp "is the Corporate Secretary and Legally Responsible Person for the Facility according to the documents on file with the Regional Water Board and the Secretary of State." *Id.* ¶ 15. Eden further alleges that "Defendant American Custom Marble manufactures and fabricates stone and synthetic resin materials used for kitchen and bathroom surfaces." *Id.* ¶ 63. Plaintiff believes that ACM "stores industrial materials outdoors that can be exposed to storm water, eroded by wind, and otherwise contaminate the surrounding watershed," *id.* ¶ 64, and that "storm water [which has collected "sediment, dirt, metals, and other pollutants"] is collected and discharged from the Facility through a series of channels that discharge via at least one outfall," which ultimately flows into the San Francisco Bay via navigable water of the United States, *id.* ¶¶ 65, 66.

B. <u>Statutory Background</u>

Section 301(a) of the CWA prohibits the discharge of pollutants into American waters except as permitted through compliance with other provisions of the Act. 33 U.S.C. § 1311(a). One of those provisions, Section 402 of the Act, allows stormwater discharges that are authorized by and comply with the terms of a National Pollutant Discharge Elimination System ("NPDES")

permit. 33 U.S.C. § 1342.[1] Section 402 enables entities to comply with the permitting requirements by applying for a state-issued "Industrial General Permit" or an individual (federal) NPDES permit. 33 U.S.C. § 1342(p).

The California State Water Resources Control Board ("State Board") issued a General Permit in 1991, which it has modified several times since then; the 2015 permit (which is still in effect) became effective on July 2, 2015.[2] Any facilities that discharge or have the potential to discharge stormwater (associated with industrial activity) must obtain an NPDES permit or submit a Notice of Intent to comply with the General Permit conditions ("NOI") or No Exposure Certification ("NEC") under California's General Permit procedures. *See* CA NPDES Website. California's General Permit both prohibits certain activities in absolute terms and imposes a number of substantive and procedural requirements on dischargers of stormwater. *Id.* Those requirements include, *inter alia*: developing a Storm Water Pollution Prevention Plan ("SWPPP"), implementing and documenting use of best management practices ("BMPs"), identifying and monitoring stormwater discharge locations and evaluating the effectiveness of BMPs, collecting and analyzing stormwater samples, and completing regular visual observations of stormwater discharges and annual compliance evaluations. *Id.* Annual reports must be certified and submitted to the Storm Water Multiple Application Reporting and Tracking System (SMARTS) each year. *Id.* Failure to comply with these requirements can constitute a violation of the conditions of the General Permit.

Under the Citizen Suit provision of the CWA, "any citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State

---

[1] Entities that fall within certain standard industrial classification ("SIC") codes and also discharge stormwater must obtain an NPDES permit. Plaintiff alleges that AMC "falls under . . . code 2821 (Plastic Material and Synthetic Resins and Nonvulcanizable Elastomers)," and as a result must apply for an NPDES permit. FAC ¶ 63.

[2] *See* National Pollutant Discharge Elimination System (NPDES): General Permit for Storm Water Discharges Associated with Industrial Activities, Order NPDES No. CAS000001 [hereinafter CA NPDES Website], STATE WATER RESOURCES CONTROL BOARD (April 1, 2014), https://www.waterboards.ca.gov/board_decisions/adopted_orders/water_quality/2014/wqo2014_0 057_dwq_rev_mar2015.pdf.

with respect to such a standard or limitation." 33 USC § 1365(a)(1).  The provision stipulates:

> No action may be commenced under subsection (a)(1) of this section
>
> (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
>
> (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation, or order . . . .

*Id.* § 1365(b)(1).  Section 1365 permits courts to impose civil penalties and to award the costs of litigation, including reasonable attorneys' fees.  *Id*. § 1365(a) and (d).

C.    Procedural Background

Plaintiff contends that on or about March 15, 2019, it served the required notice of Defendants' violations of the CWA on Defendants and provided copies to the relevant agencies, as required by the CWA.  FAC ¶ 2 (citing 33 U.S.C. § 1365(b)(1)(A)).  After waiting the required sixty days after the Notice was served on Defendants, Plaintiff filed its complaint on June 14, 2019.  *See* Docket No. 1.[3]  Defendants moved to dismiss.  *See* Docket No. 9.  On August 14, 2019, Plaintiff filed a First Amended Complaint (the operative Complaint).  Docket No. 19.  Magistrate Judge Ryu shortly thereafter denied Defendants Motion to Dismiss as moot.  Docket No. 22.  On August 28, 2019, Defendants filed a new Motion to Dismiss.  *See* Docket No. 25.  On October 16, 2019, the case was reassigned to this Court.  *See* Docket No. 46.

### III.    DISCUSSION

Defendants challenge Eden's Complaint on three grounds: (1) Plaintiff fails to state facts supporting a cause of action, (2) Plaintiff lacks standing to maintain this action, and (3) the Court lacks personal jurisdiction as to Patricia Sharp because Plaintiff failed to provide her notice in her individual capacity.  *See* Motion to Dismiss ("MTD") at 1, Docket No. 25.

---

[3] Plaintiff served an amended Notice of Violations on Defendants on June 14, 2019, the same day Plaintiff filed its original complaint.  *See* Docket No. 19-1.  The amended notice is identical to the original notice, except that it identifies the City of San Jose as an additional alleged violator (because of its role as lessor to ACM).  (An amended complaint was filed 60 days after this second notice was filed, on August 14, 2019, adding the City of San Jose as a defendant in this case.  *See* Docket No. 19.)

4

A.      Legal Standard

The "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis removed).  To avoid such a dismissal, "a plaintiff must demonstrate standing for each claim he seeks to press and 'for each form of relief that is sought.'" *Id.* at 1068–69 (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2006)).  More specifically, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity*, 868 F.3d at 816 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  An organization has "standing to bring suit on behalf of [their] members when" among other things their "members would otherwise have standing to sue in their own right." *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000).

"For purposes of ruling on a motion to dismiss for want of standing . . . the [trial court] . . . must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya*, 658 F.3d at 1068 (internal quotations omitted).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)).

Under Federal Rule of Civil Procedure 12(b)(2), a court must dismiss an action where it does not have personal jurisdiction over a defendant.  While the burden is on the plaintiff to demonstrate that the court has jurisdiction, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (citation omitted).  The Court must accept uncontroverted allegations in the plaintiff's complaint as true and resolve all disputed facts in favor of the plaintiff. *Id.*

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A

United States District Court
Northern District of California

complant that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Because a court "must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction," Fed. R. Civ. P. 12(h)(3), and also must dismiss a claim if it determines that it lacks personal jurisdiction as to that claim, *see* Fed. R. Civ. P. 12(b)(2), this memo first addresses Defendants' 12(b)(1) and 12(b)(2) arguments before turning to Defendants' request for relief under 12(b)(6). *See Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").

B.    Analysis

    1.    Organizational Standing

    An organization may assert standing to sue on its own behalf or on behalf of its members. An organization may have Article III standing to sue on its own behalf when "it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question." *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (quoting *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)).  Alternatively, "[a]n organization has standing to sue on behalf of its members where: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Am. Diabetes Ass'n*, 938 F.3d at 1154 (quoting *Ecological Rights Found.*, 230 F.3d at 1147).  Here, Eden asserts standing to sue on behalf of its members.

    Defendants argue that "Plaintiff's Complaint fails to allege any facts about its 'members' whose interests allegedly may be affected by alleged violations.  Plaintiff fails to plead the names or addresses of its members, or any specific facts about their use of the watershed at issue (the Guadalupe River and San Francisco Bay)."  MTD at 10.  With its Opposition to the Motion to Dismiss, Plaintiff submitted a Declaration by Theophilus Austin Mills, III, which states that he has been a member of Eden since before the Complaint was filed and that he has suffered injuries as a result of ACM's conduct.  *See* Declaration of Theophilus Austin Mills, III ("Mills Decl."), Docket No. 33-3; *see id.* ¶ 1 ("I became a member of EDEN on or about June 3, 2018 and have remained a member since that date."); *id.* ¶ 20 ("I have experienced both ongoing harm and emotional outrage due to American Custom Marble's [conduct] . . . in that my aesthetic and recreational interests [including birdwatching, photography, cycling, and nature walks] in that area have been severely impaired.").

    While Defendants contend that "Plaintiff's attempt to cure its pleading deficiencies by declaration is entirely inappropriate and should be rejected," Reply Brief in Support of Defendants' Motion to Dismiss ("Reply") at 3, Docket No. 36, the Ninth Circuit has held that

actions such as those taken by Plaintiff here are permissible. *See Am. Diabetes Ass'n*, 938 F.3d at 1156 n.3 ("Defendants contend the Association was required to identify in its complaint the members on which it relies [to establish standing] and failed to do so. However, the Association asserted representational standing in the FAC and provided declarations from [individual members] in response to defendants' Rule 12(b)(1) motion to dismiss. That is sufficient."). Because Plaintiffs here asserted representation standing in their Complaint and provided a declaration from Mr. Mills in response to the Motion to Dismiss, the Court concludes that Plaintiff has sufficiently alleged organizational standing and **DENIES** Defendant's Motion as it pertains to a lack of organizational standing.

> 2.  Standing to Bring Claims for Violations that Predate Eden's Existence

Defendants also contend that Plaintiff lacks "standing to allege violations of the Clean Water Act that pre-date its existence." MTD at 12. The parties provided no cases that adequately resolve this issue, and the Court was unable to locate any cases speaking directly to the question whether an organization has standing to assert claims related to actions that predate its existence. The text of *Ecological Rights Foundation* indicates that "[a]n organization has standing to bring suit on behalf of its members *when . . . its members would otherwise have standing to sue in their own right*." *Ecological Rights Found.*, 230 F.3d at 1147 (emphasis added). Assuming the organization can also meet the germaneness and participation requirements, the key inquiry under *Ecological Rights Foundation* appears to be whether Mr. Mills would have standing "in his own right" to bring suit for the alleged violations of the CWA, even if those violations pre-date the existence of Eden. Defendants cite no case to the contrary. If Mr. Mills suffered an injury in fact, he could sue for violations going back as far as any relevant statute of limitations would permit.

As to the statute of limitations, the Ninth Circuit's decision in *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517 (9th Cir. 1987) sets forth the limitations period. In 1985, the Sierra Club filed a complaint against Chevron, alleging "violations of the refinery's NPDES permit dating from July 1977 to the date of the filing of the complaint." 834 F.2d at 1520. Chevron argued for "partial summary judgment . . . on all claims that related to violations occurring before March 19, 1982, because [it believed that] California's three-year statute of limitations barred

these claims." *Id.* The Ninth Circuit noted:

> Several district courts have already held that section 2462[4] applies to citizen actions seeking the enforcement of civil penalties under the Clean Water Act. We agree with these courts. Application of section 2462 to citizen enforcement suits is in keeping with the language of the statute; a citizen enforcement suit is also an 'action . . . for the enforcement of [a] civil fine.' Furthermore, this approach logically extends pre-Clean Water Act circuit decisions regarding the proper scope of section 2462 and promotes the important federal policy of uniformly and adequately enforcing the Clean Water Act.

*Id.* at 1521 (internal citations omitted). Thus, under the relevant statute of limitations, Eden would be able to allege violations going back for—at most—five years prior to the filing of this suit. Mr. Mills alleges that he has lived and worked in the Bay Area for over thirty years and began fishing and birdwatching in the Guadalupe River as a child. Mills Decl. ¶¶ 5, 10. Thus, construing the facts in favor of the complaining party, as the Court must do at this stage, it appears that Mr. Mills has alleged injuries that stem as far back as five years prior to the filing of the Complaint. Thus, Eden has standing to assert claims for violations going back that far. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as it pertains to violations of the Clean Water Act that *pre-date* Plaintiff's existence but are within the limitations period.

### 3. Standing to Assert Fourth Cause of Action

Finally, Defendants contend that "Plaintiff has no standing to maintain its Fourth Cause of Action for alleged Submission of False Annual Reports to the Water Board" because false certification of an annual report "is a criminal matter, not civil." MTD at 13. However, Section 1365 (which sets forth the requirements for citizen suits) permits lawsuits by citizens "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). For the purposes of Section 1365, "the term 'effluent standard or limitation under this chapter' means," in relevant part, a "condition of a permit issued under section 1342." *Id.* § 1365(f). Because California requires—as a condition of its General Permit (which was issued pursuant to Section 1342)—that any person "signing, certifying, and

---

[4] Section 2462 states: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462.

submitting" General Permit documents via SMARTS "certify under penalty of law" that the information contained in the documents is "true, accurate, and complete," *see* CA NPDES Website at Section XXI.L, it appears that submitting a false document is a violation of a "condition of a permit issued under Section 1342." Consequently, the submission of a false document is a cause of action cognizable under Section 1365.[5] In addition, Plaintiff does not seek to impose any criminal *penalties*, such as incarceration or criminal fines, through this action. *See* FAC ¶ 116 (referencing criminal penalties as a means of demonstrating that "the General Permit *requires* that Annual Reports submitted to SMARTS be certified under penalty of law," *id.* ¶ 115 (emphasis added)). Accordingly, the Court **DENIES** Defendants' Motion to Dismiss on the grounds that Plaintiff lacks standing to assert its Fourth Cause of Action.

### 4. Personal Jurisdiction Over Patricia Sharp

Defendants also contend that the Court lacks personal jurisdiction over Patricia Sharp because Plaintiffs "failed to provide any notice to Ms. Sharp in her individual capacity." MTD at 13. Defendants further allege: "At no time did Plaintiff state that it intended to sue Ms. Sharp in her individual capacity nor did it serve Ms. Sharp as an individual (Plaintiff served Ms. Sharp as an agent in her capacity as an officer)." *Id.* at 14; *compare* 60-Day Notice of Violations and Intent to File Suit ("60-Day Notice"), Docket No. 19-1 (addressed to "Facility Manager, American Custom Marble, Inc." and "Patricia A. Sharp, Agent for [S]ervice, American Custom Marble, Inc.") with FAC at 1 (naming Patricia A. Sharp as a defendant in her individual capacity).

Under the CWA, a corporate officer may be held personally liable for violations of the Act. *See Puget Soundkeeper All. v. Tacoma Metals Inc.*, No. C07-5227RJB, 2008 WL 3166767, at *13

---

[5] In the enforcement section of the CWA, the statute provides: "Any person who knowingly makes any false material statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter or who knowingly falsifies, tampers with, or renders inaccurate any monitoring device or method required to be maintained under this chapter, shall upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than 2 years, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $20,000 per day of violation, or by imprisonment of not more than 4 years, or by both." 33 U.S.C.A. § 1319(c)(4). However, it does not appear that Plaintiff is proceeding under Section 1319. *See* FAC at 22 (premising the Fourth Cause of Action upon violations of permit conditions and Sections 1311 (which prohibits discharge of pollutants) and 1342 (which sets out the NPDES permit system) of the CWA.

(W.D. Wash. Aug. 5, 2008) (stating that a corporate officer can be held personally liable for violations of the CWA); *Waterkeepers N. Cal. v. Ag Indus. Mfg., Inc.*, No. CIV-S-00-1967MCEPAN, 2005 WL 2001037, at *12 (E.D. Cal. Aug. 19, 2005) (stating that a "responsible corporate officer" may be held personal liable under the CWA).) The key issue is not whether Ms. Sharp *can* be held personally liable under the CWA, but instead whether she *received adequate notice* that she was being sued in her individual capacity.

In support of the contention that it Ms. Sharp was properly noticed, Plaintiff notes: (1) that the letter was addressed to "Officers, Directors, Operators, Property Owners and/or Facility Managers of American Custom Marble, Inc.," (and because corporate officers can be held individually liable, Ms. Sharp was on notice that she was being served in her individual capacity) (2) Ms. Sharp was served at her home, and (3) Ms. Sharp "is a responsible corporate officer of American Custom Marble (its corporate secretary) and is also the Facility's Legally Responsible Person" (again implying that she should be aware that she could and would be sued in her individual capacity). Opp. at 12–13. Given the circumstances and applicable law, Ms. Sharp had fair notice she was being sued in her individual capacity.

Notably, courts within the Ninth Circuit have been reluctant to dismiss complaints where a defendant received imperfect notice about being sued in his/her individual capacity, unless the defendant suffered prejudice as a result. *See, e.g.*, *Lafleur v. Bergstrom*, No. SA CV 14-0364-DOC, 2014 WL 3974559, at *3 (C.D. Cal. Aug. 13, 2014) ("Defendants were only served in their individual capacities even though the complaint names them in their individual and representative capacities . . . [however,] slight defects in the summons process do not merit dismissal unless a party suffers prejudice because the defective summons failed to give the party adequate notice."); *Karl v. City of Mountlake Terrace*, No. C09-1806RSL, 2011 WL 1459428, at *2 (W.D. Wash. Apr. 15, 2011), *aff'd,* 678 F.3d 1062 (9th Cir. 2012) ("[T]he amended complaint did not rule out individual capacity allegations. Nor did defendants seek to clarify the capacity issue. They have not shown that they will suffer prejudice. For all of those reasons, the Court will not dismiss the allegations against [defendants] in their individual capacities."). Although these cases are not brought under the CWA, the general principle applies. Defendant has alleged no prejudice

11

stemming from Plaintiffs' error, dismissal on the grounds of lack of notice is not warranted. As a

result, the Court **DENIES** Defendants' Motion to Dismiss as it pertains to a lack of personal

jurisdiction over Ms. Sharp.

>    5.    Failure to State a Cause of Action

Plaintiffs state seven causes of action:

>    1. First Cause of Action – Failure to Apply for NDPES Coverage
>    under the General Permit Violations of Permit Conditions and
>    the Act (33 U.S.C. §§ 1311, 1342)
>
>    2. Second Cause of Action – Failure to Prepare, Implement,
>    Review, and Update an Adequate Storm Water Pollution
>    Prevention Plan (Violations of Permit Conditions and the Act,
>    33 U.S.C. §§ 1311, 1342)
>
>    3. Third Cause of Action – Failure to Develop and Implement an
>    Adequate Monitoring and Reporting Program (Violation of
>    Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)
>
>    4. Fourth Cause of Action – Submission of False Annual Reports
>    to the Regional Water Board (Violations of Permit Conditions
>    and the Act, 33 U.S.C. §§ 1311, 1342)
>
>    5. Fifth Cause of Action – Failure to Implement the Best Available
>    and Best Conventional Treatment Technologies (Violations of
>    Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)
>
>    6. Sixth Cause of Action – Discharges of Contaminated Storm
>    Water in Violation of Permit Conditions and the Act (Violations
>    of 33 U.S.C. §§ 1311, 1342)
>
>    7. Seventh Cause of Action – Failure to Properly Train Facility
>    Employees and Pollution Prevention Team (Violations of Permit
>    Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

Defendants contest these allegations by noting: "On May 8, 2019, the Water Board

conducted an inspection of the facility. The inspector determined that there were 'No' violations

and recommended 'No Further Action' by ACM." MTD at 6 (citing SMARTS Inspection Details

("SMARTS Report"), Docket No. 10-1, Exh. B). In addition, at the hearing on the Motion to

Dismiss, Defendants indicated that they had recently received a "No Exposure Certificate" from

the State. *See also* Joint Case Management Statement at 3, Docket No. 57 ("ACM filed its Notice

of Intent, No Exposure Certification, and all other documentation necessary to comply with the

General Permit on September 5, 2019. By letter dated December 19, 2019, the Water Board

1   acknowledged receipt and processed the documentation."). The issuance of the No Exposure

2   Certificate means that Defendants do "not require a permit authorization for any stormwater

3   discharges associated with industrial activity under the EPA's General Permit." *Id.*

4          Defendants contend that the issuance of this certificate means that Plaintiff has no cause of

5   action. MTD at 1. However, the CWA provides that no action may be commenced if "the

6   Administrator or State *has commenced and is diligently prosecuting a civil or criminal action* in a

7   court of the United States, or a State to require compliance with the standard, limitation, or order."

8   33 U.S.C. § 1365(b)(1)(B) (emphasis added). The CWA provides for no other bar such as one

9   based on the issuance of a No Exposure Certificate. Indeed, the Ninth Circuit has held that, even

10  where "the state agency charged with administering the NPDES permit program has determined

11  that such a permit is not required," a court "must honor the [CWA's] express provisions

12  authorizing citizen suits in appropriate cases where procedural requirements are met." *Ass'n to*

13  *Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1012 (9th Cir.

14  2002). Absent an express bar, courts should permit such cases to move forward because "neither

15  the text of the Act nor its legislative history expressly grants to the EPA or such a state agency the

16  *exclusive* authority to decide whether the release of a substance into the waters of the United States

17  violates the Clean Water Act." *Id.* (emphasis added). Thus, the issuance of the No Exposure

18  Certificate does not prohibit Plaintiff from asserting its claims in this suit.

19         Although the Court finds that the No Exposure Certificate does not foreclose Plaintiff's

20  causes of action, Plaintiff must still plead its claims adequately. As currently stated, the Court

21  finds that the fifth, sixth, and seventh causes of action are insufficiently alleged.

22         With respect to the sixth cause of action, Plaintiff alleges that "[d]uring every rain event

23  presumably [between the permissible start date pursuant to the statute of limitations and the filing

24  of the lawsuit], storm water flows freely over exposed materials, waste products, and other

25  accumulated pollutants . . . becoming contaminated with iron, sediment, zinc, nitrates, phosphorus

26  and other potentially un-monitored pollutants at levels above applicable water quality standards."

27  FAC ¶ 127. However, Plaintiffs do not allege a single specific discharge event, nor do they

28  specify how many times stormwater discharge events occurred. Because each discharge of

contaminated stormwater constitutes a separate violation of the CWA, Defendants are entitled to know—at the very least—how many violations are being alleged and how Plaintiffs identified "rain events" sufficient to cause contaminated stormwater to be discharged from Defendants' facilities.

In addition, the fifth cause of action (relating to failures to implement the best available and best conventional treatment technologies) and the seventh cause of action (relating to training facility employees) are alleged only in general terms that merely "recite the elements of a cause of action." *Levitt*, 765 F.3d at 1135. For the fifth cause of action, Plaintiff simply repeats what the General Permit requires and states that "Defendants failed to implement BAT [Best Available Treatment] and BCT [Best Conventional Treatment] at the Facility for its discharges of TSS, Zinc, synthetic polymer resins and other potentially un-monitored pollutants, in violation of Effluent Limitation V(A) of the General Permit." FAC ¶¶ 120–22. Similarly, for the seventh cause of action, Plaintiff simply recites what the statute requires and states that "Defendants have failed to properly train Facility employees and the designated members of its Pollution Prevention Team, which has resulted in the General Permit violations alleged herein." *Id.* ¶¶ 131–34. This is not enough.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to the Fifth, Sixth, and Seventh Causes of Action, but permits leave to amend.

///

///

///

///

///

///

///

///

///

///

14

## IV. CONCLUSION

In light of the foregoing analysis, the Court **DENIES** Defendants' Motion to Dismiss on the grounds of standing and personal jurisdiction but **GRANTS** the Motion to Dismiss under Rule 12(b)(6) as to the Fifth, Sixth, and Seventh Causes of Action.   The dismissal is without prejudice, and Plaintiffs are permitted thirty (30) days to file an amended complaint.

This order disposes of Docket No. 50.

**IT IS SO ORDERED**.

Dated: February 13, 2020

_____
EDWARD M. CHEN
United States District Judge